Margaret E. Dayton (SBN 274353)
PEDayton@winston.com
Shui Sum Lau (SBN 345456)
SsLau@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90017-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

**Attorneys for Defendant**
**ALLSTATE INSURANCE COMPANY**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONRAD JAMES, individually AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01931-JSC<br>Hon. Judge Jacqueline Scott Corley<br><br>**DEFENDANT ALLSTATE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with Request for Judicial Notice; Declaration of Karla Franzen; and [Proposed] Order*]<br><br>Date:       August 10, 2023<br>Time:       10:00 a.m.<br>Dept.:       8<br><br>Complaint filed:       March 10, 2023 |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 10, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Judge Jacqueline Scott Corley (Courtroom 8, 19th Floor) of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Allstate Insurance Company ("Allstate"), will, and hereby does, move to dismiss all causes of action in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

By this Motion, Allstate seeks an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all causes of action in Plaintiff's Complaint against Allstate for failure to state a claim.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Karla Franzen and Exhibit A thereto, the concurrently-filed Request for Judicial Notice, and all pleadings, papers, and documents on file herein, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

DATED: May 31, 2023

WINSTON & STRAWN LLP
MARGARET E. DAYTON
SHUI SUM LAU

By: _/s/ Margaret E. Dayton_
Margaret E. Dayton (SBN 274353)
PEDayton@winston.com
Shui Sum Lau (SBN 345456)
SsLau@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90017-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF ISSUE TO BE DECIDED ..................................................... 2

III.    SUMMARY OF FACTUAL ALLEGATIONS ...................................................... 2

IV.     FACTS SUBJECT TO JUDICIAL NOTICE ...................................................... 3

V.      ARGUMENT ...................................................................................................... 5

        A.      Count I Does Not Adequately Allege a Violation of CIPA, Section 631 ...... 5

                1.      The Complaint Cannot Allege a Primary Violation Against Allstate .............. 6

                2.      There is No Violation by Heap for Which Allstate Could Be Secondarily
                        Liable ........................................................................................................ 7

                        (a)      Heap Is Not a "Third Party" to the Communication. ........................... 7

                        (b)      Even if Heap is a Non-Party, Plaintiff Does Not Allege Facts
                                 Constituting a Violation of Section 631 ............................................. 10

                                 (i)      Plaintiff Does Not Allege a Violation of Section 631(a)'s
                                          First Clause. .................................................................... 10

                                 (ii)     Plaintiff Does Not Allege a Violation of Section 631(a)'s
                                          Second Clause. ............................................................... 11

                                 (iii)    Plaintiff Does Not Allege a Violation of Section 631(a)'s
                                          Fourth Clause. ................................................................ 13

        B.      Count III Must Be Dismissed Because Plaintiff Does Not Allege a Claim for
                Invasion of Privacy Under the California Constitution ................................ 13

                1.      Because Plaintiff Does Not Allege a Wiretapping Claim, His
                        Constitutional Privacy Claim Based on Wiretapping Fails ......................... 13

                2.      Plaintiff Does Not Allege a Constitutional Privacy Claim ........................... 14

                        (a)      Plaintiff Does Not Allege a Legally Protected Privacy Interest. ........ 14

                        (b)      Plaintiff Does Not Have a Reasonable Expectation of Privacy .......... 16

                        (c)      Plaintiff Does Not Allege a Highly Offensive Intrusion. .................. 16

        C.      Count II Must Be Dismissed Because Plaintiff Lacks Standing to Bring a UCL
                Claim and Plaintiff Fails to Adequately Allege a Claim Under the UCL ................. 18

                1.      Plaintiff Lacks Standing to State a Claim Under the UCL Because He
                        Does Not Allege Economic Injury ................................................................ 18

                2.      The Complaint Does Not Allege a Viable UCL Claim. ................................ 19

                        (a)      The Complaint Does Not Allege a Claim Under the Unlawful
                                 Prong. .......................................................................................... 19

                        (b)      The Complaint Does Not Allege a Claim Under the Unfair Prong. ... 20

                                 (i)      The Complaint Does Not Allege a Claim Under the Unfair
                                          Prong Because It Does Not Allege a Claim Under the
                                          Unlawful Prong Based on the Same Conduct ........................ 20

(ii)    The Complaint Does Not Sufficiently Allege Facts
Supporting a Claim Under the Unfair Prong ........................... 20

VI.    CONCLUSION.................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................5

*Byars v. Hot Topic,*
    No. 22-1652-JGB, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023)...........................8

*Campbell v. Facebook Inc.,*
    77 F.Supp.3d 836 (N.D. Cal. 2014) ....................................................................19

*Catsouras v. Dep't of Cal. Highway Patrol,*
    181 Cal.App.4th 856 (2010) ...............................................................................18

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal.4th 163 (1999) ....................................................................................19, 21

*Claridge v. RockYou, Inc.,*
    785 F.Supp.2d 855 (N.D. Cal. 2011) ..................................................................18

*Conservation Force v. Salazar,*
    646 F.3d 1240 (9th Cir. 2011) ..............................................................................5

*Eidmann v. Walgreen Co.,*
    522 F.Supp.3d 634 (N.D. Cal. 2021) ..................................................................20

*Folgelstrom v. Lamp Plus, Inc.,*
    195 Cal.App.4th 986 (2011) ..........................................................................17, 18

*In re Google Assistant Priv. Litig.,*
    457 F.Supp.3d 797 (N.D. Cal. 2020) ..............................................................10, 11

*In re Google Location History Litig.,*
    428 F.Supp.3d 185 (N.D. Cal. 2019) ....................................................5, 14, 15, 16

*In re Google, Inc. Privacy Policy Litig.,*
    58 F.Supp.3d 968 (N.D. Cal. 2014) ..............................................................17, 19, 22

*Graham v. Noom, Inc.,*
    533 F.Supp.3d 823 (N.D. Cal. 2021) ...........................................................*passim*

*Hadley v. Kellogg Sales Co.,*
    243 F.Supp.3d 1074 (N.D. Cal. 2017) ...........................................................20, 21

*Heeger v. Facebook, Inc.*,
   509 F.Supp.3d 1182 (N.D. Cal. 2020) ........................................................................... 15

*Herron v. Best Buy Co. Inc.*,
   924 F.Supp.2d 1161 (N.D. Cal. 2013) ...................................................................... 20, 21

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal.4th 1 (1994) ...................................................................... 14, 15, 16, 17

*Hodsdon v. Mars, Inc.*,
   891 F. 3d 857 (9th Cir. 2018) ...................................................................... 19, 22

*Ingels v. Westwood One Broadcasting Serv., Inc.*,
   129 Cal.App.4th 1050 (2005) ...................................................................... 19

*In re iPhone Application Litig.*,
   844 F.Supp.2d 1040 (N.D. Cal. 2021) ...................................................................... 17

*Johnson v. Blue Nile, Inc.*,
   No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ............................... *passim*

*Khoury v. Maly's of California*,
   14 Cal.App.4th 612 (1993) ...................................................................... 21

*Krantz v. BT Visual Images, L.L.C.*,
   89 Cal.App.4th 164 (2001) ...................................................................... 19

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ...................................................................... 18

*Licea v. Am. Eagle Outfitters*,
   --- F.Supp.3d ----, 2023 WL 2469630 (Mar. 7, 2023) ...................................................................... 7, 8

*Licea v. Cinmar, LLC*,
   No. 22-6454-MWF, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ............................... *passim*

*Low v. LinkedIn Corp.*,
   900 F.Supp.2d 1010 (N.D. Cal. 2012) ...................................................................... 17

*Mai v. Supercell Oy*,
   --- F.Supp.3d ----, No. 20-cv-05573, 2023 WL 25713 (N.D. Cal. Jan. 3, 2023) ...................... 20

*Martin v. Sephora USA, Inc.*,
   No. 1:22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......................................... 5

*Mastel v. Miniclip SA*,
   549 F.Supp.3d 1129 (E.D. Cal. 2021) ...................................................................... 10, 11, 13, 15, 16

*McCoy v. Alphabet, Inc.*,
   No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ...................................... 17, 22

*Moss v. United States Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ...................................................................................................5

*Revitch v. New Moosejaw, LLC*,
    No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......................................9

*Rodriguez v. Google LLC*,
    No. 20-cv-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)........................................11, 12

*Romoff v. Gen. Motors LLC*,
    574 F.Supp.3d 782 (S.D. Cal. 2021)......................................................................................20

*Saleh v. Nike*,
    562 F.Supp.3d 503 (C.D. Cal. 2021) ...................................................................9, 14, 15, 17

*Saul v. United States*,
    928 F.2d 829 (9th Cir. 1991) .................................................................................................5

*Sheski v. Shopify (USA) Inc.*,
    No. 19-cv-06858-HSG, 2020 WL 2474421 (N.D. Cal. May 13, 2020) .................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal.App.4th 700 (2001) ..................................................................................................19

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal.App.4th 861 (1999) ..................................................................................................21

*Susan S. v. Israels*,
    55 Cal.App.4th 1290 (1997) ................................................................................................18

*Teton Global Invest. LLC v. LC Invest. 2010*,
    No. 20-cv-01756-AJB-MSB, 2021 WL 5861565 (N.D. Cal. Aug. 11, 2021).............21, 22, 23

*Troyk v. Farmers Group, Inc.*,
    171 Cal.App.4th 1305 (2009) ..............................................................................................18

*Urbaniak v. Newton*,
    226 Cal.App.3d 1128 (1991) ...............................................................................................18

*Williams v. What If Holdings, LLC*,
    No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)........................... *passim*

*Wright v. Charles Schwab & Co., Inc.*,
    No. 20-cv-05281, 2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ...................................22, 23

*Yoon v. Lululemon USA, Inc.*,
    549 F.Supp.3d 1073 (C.D. Cal. 2021) ..........................................................................9, 14, 15

**Statutes**

Cal. Bus. and Prof. Code § 17200 ........................................................................... *passim*

Cal. Bus. & Prof. Code § 17204 ........................................................................... 18, 19

Cal. Penal Code § 631 ........................................................................... *passim*

**Other Authorities**

California Constitution, Art. I, § 1 ........................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff Conrad James attempts to assert claims against Defendant Allstate Insurance Company ("Allstate") and software-as-a-service provider Defendant Heap, Inc. ("Heap") based on alleged recording of Plaintiff's browsing activities and data entered on Allstate's website. Yet, several California district courts have already rejected such claims at the pleading stage. Allegations that a website owner utilized a software-as-as-service provider's product to capture a consumer's interactions with the defendant's own website do not state a claim for wiretapping in violation of the California Invasion of Privacy Act ("CIPA") California Penal Code Section 631 ("Section 631"). Nor does the practice violate the California constitutional right to privacy.

With regard to Plaintiff's Section 631 claim, California law is clear that parties cannot eavesdrop or wiretap their own communication, and the recording of a communication by a party to that communication does not violate the statute. Thus, Plaintiff cannot assert a claim for a direct violation of Section 631 against Allstate. And, while a party can be liable for aiding and abetting a third party's wiretapping, California district courts have held that software-as-a-service providers are not third parties under the statute. Instead, they find such service vendors function as an extension of the party to the communication and are also exempt from liability. Therefore, there is no violation of the statute by Heap for which Allstate could be held secondarily liable. In any event, even if Heap were considered a third party who could violate the statute, the Complaint does not sufficiently allege facts supporting a claim under Section 631.

Nor does the Complaint allege a California constitutional invasion of privacy claim. Again, courts have rejected invasion of privacy claims based on the collection and recording of browsing activity and data entered on websites. The collection – and even disclosure – of such data is a routine commercial behavior that cannot meet the "high bar" for constitutional privacy claims. Nor could the Complaint satisfy this standard. Plaintiff cannot allege a reasonable expectation of privacy in information voluntarily shared with Allstate on its website, in particular given that Allstate's Privacy Policy expressly discloses the data collection and data sharing that Plaintiff alleges occurred.

Plaintiff's California Business and Professions Code Section 17200 ("UCL") claim fares no

better. It fails for the simple reason that Plaintiff does not – and cannot – allege the economic injury required to establish standing under the UCL. And even if Plaintiff had standing, the Complaint fails to sufficiently allege the wiretapping that forms the basis of the UCL claim or facts supporting liability. Accordingly, it must be dismissed.

As set forth fully below, each of Plaintiff's claims fail as a matter of law. Therefore, the Complaint should be dismissed in its entirety and with prejudice.

## II.    STATEMENT OF ISSUE TO BE DECIDED

The issue to be decided through this Motion is whether Plaintiff's claims must be dismissed because Plaintiff has not sufficiently alleged a claim for relief under CIPA Section 631, the UCL, and the California constitutional right to privacy.

## III.   SUMMARY OF FACTUAL ALLEGATIONS[1]

Allstate offers quotes for insurance policies to consumers through its website, Allstate.com. (Compl. ¶ 1.) Heap is a marketing analytic software-as-a-service company that sells software. (*Id.* ¶ 2.) Plaintiff alleges that Heap's software "records real-time consumer interactions with websites, including keystrokes, mouse clicks, and other electronic communications. Through its 'Session Replay' feature, Heap allows 'endless replays' that capture a moment-by-moment replay of what happened on the webpage in the order in which it happened, capturing what the consumer does on the page." (*Id.* ¶ 21 (footnote omitted).) Heap provides the software and the generated data to its clients, the website owners, for a fee. (*Id.* ¶¶ 23, 28.) According to the Complaint, "[w]ebsite owners can use this software by adding Heap's JavaScript into the source code of their website." (*Id.* ¶ 2 (footnote omitted).) Plaintiff alleges that Allstate is one of "Heap's partners" and "Allstate uses Heap's JavaScript on Allstate.com." (*Id.* ¶¶ 28, 30.)

Plaintiff alleges that he visited Allstate.com to search for an insurance quote in November or December 2022 and entered information. (*Id.* ¶¶ 6, 46.) Allstate, as the website owner, was the intended recipient of Plaintiff's communications. (*Id.* ¶¶ 6, 17, 46.) Plaintiff alleges that "[d]uring his visit, Allstate and Heap recorded Plaintiff's electronic communications in real time, using the

---

[1] As it must, this Motion to Dismiss accepts the factual allegations as true. Should this case proceed past the pleading stage, Allstate expressly reserves its right to challenge the truth of each and every allegation of the Complaint.

intercepted data to attempt to learn the identity, email address, zip code, age, height, weight, use of prescription medications and tobacco products, and other PII and PHI of Plaintiff while he sought an insurance quote." (*Id.* ¶ 48.) Plaintiff alleges that "Heap's 'Session Replay' feature created a video capturing Plaintiff's keystrokes and mouse clicks on the website. It also captured the date and time of each visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, browser type, and the operating system on their [sic] device." (*Id.* ¶ 50.)

The Complaint does not allege that anything was done with the allegedly-captured data, other than stating that Heap provided it to Allstate–or vice versa, (*see id.* ¶¶ 23, 43), and the Complaint is unclear as to how and when the alleged interception and data sharing occurs. In some instances, Plaintiff baldly alleges that his "electronic communications" were "intercepted in real time." (*Id.* ¶¶ 4, 6, 20, 21, 23, 41, 48, 49, 56, 57.) For example, Plaintiff alleges Heap's JavaScript "***automatically*** start[s] to capture the data submitted in the form" when a user visits the website, and "***Heap*** in turn, ***provides this data to its clients***." (*Id.* ¶¶ 22, 23, 25 (emphasis added).) Elsewhere, the Complaint alleges that ***Allstate*** provides the data to ***Heap***. For instance, the Complaint alleges that "***Allstate . . . captures*** keystrokes, mouse clicks and other communications of visitors to its website, and ***Allstate supplies that information to Heap***." (*Id.* ¶ 43 (emphasis added).)

The Complaint contends that the use of Heap's session replay software on Allstate.com constitutes "wiretapping" under CIPA Section 631. Based on this alleged "wiretapping," Plaintiff asserts three causes of action: (1) Count I for violation of Section 631; (2) Count II for violation of the UCL; and (3) Count III for invasion of privacy in violation of Article I of the California Constitution.

## IV.   FACTS SUBJECT TO JUDICIAL NOTICE

As the Complaint alleges, Allstate.com links to Allstate's Privacy Statement. (Compl. ¶ 40.) Allstate's Privacy Statement that was in effect from November 1, 2022 through December 31, 2022[2] discloses that:

- "We collect personal information about you in several ways from several sources. We collect personal information ***directly from you*** including when you sign up for

---

[2] Allstate's Privacy Statement is subject to judicial notice. *See* Allstate's Request for Judicial Notice.

services, buy a product . . ., or ***during the quoting***, registering, application, claims handling or roadside assistance processes." (Declaration of Karla Franzen ("Franzen Decl."), Ex. A (Privacy Statement) (emphasis added).)

- "We ***and service providers working on our behalf*** collect personal information from you when you use one of our websites, mobile apps, view our emails or otherwise engage with us through a computer or mobile device ("Sites")." (*Id.* (emphasis added).)

- Allstate collects "Internet or other electronic network activity information," which includes, by way of example, "[b]rowsing history, search history, information regarding your interaction with our website, application or advertisement, links you use or web pages you visit while visiting our site or applications, browser type, internet service provider (ISP), cookies, and mobile device information including device identifier or other information." (*Id.*)

- Allstate discloses that it collects information "using ***analytics software***, cookies and other tracking technologies." (*Id.* (emphasis added).)

- "When you visit our Sites, ***we and our service providers automatically collect information about your use of and access to these Sites***. We collect this information through a variety of tracking technologies, including cookies, Flash objects, web beacons (also called pixel tags), embedded scripts, location-identifying technologies, and similar technology (collectively, 'tracking technologies'). Information we collect automatically about you may be combined with other personal information we collect directly." (*Id.* (emphasis added).)

- Allstate discloses that it shares information with service providers and other third parties, including service providers that "provide services that support our online activities including providing tracking technologies, web hosting and analytics." (*Id.*)

///
///
///
///

## V.   ARGUMENT

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. A district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). In assessing the legal sufficiency of a complaint, courts may consider matters subject to judicial notice. *In re Google Location History Litig.*, 428 F.Supp.3d 185, 189 (N.D. Cal. 2019).

Although a motion to dismiss may be granted with leave to amend, leave to amend is not required where any "amendment would be futile, or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (internal citation omitted).

### A.   Count I Does Not Adequately Allege a Violation of CIPA, Section 631.

The Court should dismiss Count I because the Complaint fails to allege a violation of Section 631. Section 631 contains "three distinct and mutually independent patterns of conduct: (1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023), adopted 2023 WL 3061957 (Apr. 24, 2023) (cleaned up); Cal. Penal Code § 631(a). Section 631 also contains a fourth basis for secondary liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit,

or cause to be done any of the other three bases for liability." *Id.* (internal quotation marks and citations omitted). Specifically, the statute imposes liability on:

> Any person who,
>
> [1] by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
>
> [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section. . . .

Cal. Penal Code § 631(a) (line breaks added). Plaintiff seeks to hold Allstate liable under the first and fourth clauses of Section 631(a). (*See* Compl. ¶¶ 75(a)-(b).) And Plaintiff seeks to hold Heap liable under the first, second, and fourth clauses. (*See id.* ¶¶ 76(a)-(c).)

As explained below, Count I fails to allege a claim because: (1) Allstate is a party to the communication and therefore, cannot be primarily liable for a violation of the statute; and (2) Plaintiff does not allege that Heap violated the statute, and therefore, there is no violation for which Allstate could be secondarily liable.

### 1. The Complaint Cannot Allege a Primary Violation Against Allstate.

Plaintiff cannot assert a primary violation of Section 631 against Allstate. "Parties to a conversation cannot eavesdrop on their own conversation." *Williams v. What If Holdings, LLC*, No. 22-03780-WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022); *Licea v. Cinmar, LLC*, No. 22-6454-MWF, 2023 WL 2415592, at *7 (C.D. Cal. Mar. 7, 2023) (hereinafter "*Cinmar*") ("Section 631 contains an exemption from liability for a person who was a 'party' to a communication.") (citations omitted). Liability under Section 631 applies only to eavesdropping by a third party and not to a recording by a participant to the conversation. *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 832 (N.D. Cal. 2021); *Cinmar*, 2023 WL 2415592, at *7.

Plaintiff alleges that Allstate, as the website owner of Allstate.com is a party to the communication. (Compl. ¶¶ 6, 17, 46, 48). As a party to the communication, Allstate cannot violate the first three clauses of Section 631(a). Therefore, Plaintiff's claim that Allstate violated the first clause of Section 631(a), (*see* Compl. ¶ 75.a.), fails a matter of law. *See Williams*, 2022 WL 17869275, at *2 (website owner cannot be liable under first three clauses of Section 631(a)); *Licea v. Am. Eagle Outfitters*, --- F.Supp.3d ----, 2023 WL 2469630, at *7 (Mar. 7, 2023) (same) (hereinafter "*Am. Eagle*"); *Cinmar*, 2023 WL 2415592, at *7.

As such, Allstate's liability–if any–could only be premised on aiding and abetting Heap's violation of Section 631. *See Williams*, 2022 WL 17869275, at *2; *see also Cinmar*, 2023 WL 2415592, at *7. However, as set forth below, the Complaint does not allege that Heap violated any provision of Section 631. Therefore, Count I fails as a matter of law.

### 2. There is No Violation by Heap for Which Allstate Could Be Secondarily Liable.

#### (a) Heap Is Not a "Third Party" to the Communication.

"[A] party may be held vicariously liable under the fourth clause of the section [631] where it 'aids, agrees with, employs, or conspires with any person to unlawfully do, or permit, or cause to be done any of the acts or things' prohibited in the previous three clauses." *Cinmar*, 2023 WL 2415592, at *7. The question boils down to whether the software service vendor was an independent third party hired to eavesdrop on the defendant's communications, or whether the software vendor's software was merely a tool that the defendant used to records its own communications with the plaintiff. *See Williams*, 2022 WL 17869275, at *2.

California district courts, including those in this district, have concluded that using a software vendor to record a user's website activity for the use and benefit of the website owner is akin to a recording device and does not violate Section 631. *Graham*, 533 F.Supp.3d at 832 (finding software service provider an extension of the operator not subject to third-party eavesdropper liability under Section 631); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same); *see Cinmar*, 2023 WL 2415592, at *9. Software service providers are entitled to the "party exemption" from liability under Section 631. As a result, "[Allstate] is not liable for

aiding and abetting [Heap's] wrongdoing because there is no wrongdoing." *See Graham*, 533 F.Supp.3d at 833.

In *Graham*, users of a web application brought a putative class action against the web application operator and its session replay software vendor. *Graham*, 533 F.Supp.3d at 828. The plaintiffs alleged, in relevant part, that the software vendor illegally wiretapped their communications with the web application in violation of Section 631. *Id.* The plaintiffs alleged that the website owner and software vendor used the software vendor's session replay to record what visitors were doing on the website, such as keystrokes, mouse clicks, and page scrolling, thereby creating a full picture of the user's website interactions. *Id.* at 827. The plaintiffs alleged this activity violated Section 631(a) and constituted an illegal wiretap. *Id.* at 828. The *Graham* court rejected the argument and dismissed the Section 631 claim. It held that "as a service provider, [the vendor] is an extension of [the website operator]. . . [and] it is not a third-party eavesdropper." *Id.*

Similarly, in *Williams*, the court held that the use of session replay software provided by a third-party vendor did not give rise to a violation of Section 631 because the software service provider was "merely a tool that [the website owner] used to record its own communications with plaintiff." *Williams*, 2022 WL 17869275, at *3. There the plaintiff alleged that the third-party vendor recorded the user's interactions with the website and the videos were hosted and stored on the third-party vendor's servers. The court concluded the third-party vendor "functioned as a recorder, not an eavesdropper." *Id.* at *4; *see also Cinmar*, 2023 WL 2416692, at *7-*9 (concluding software used to record website chats is akin to a recording device and does not violate Section 631(a)); *Johnson*, 2021 WL 1312771, at *2 (same); *Am. Eagle*, 2023 WL 2469630, at *8 (same); *Byars v. Hot Topic*, No. 22-1652-JGB, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023) (same).

Here, Plaintiff alleges that Heap "is a marketing analytic software-as-a-service ("SaaS") company that sells an analytics platform software product that records consumer interactions with a website in real time." (Compl. ¶¶ 2, 21.) "Website owners can use this software by adding Heap's JavaScript into the source code of their website," which "allows both Heap and the website owner to record a visitor's keystrokes and other actions on the website." (*Id.* ¶ 2.) Heap "provides this data to its clients," and advertises that it gives its clients "the full picture and then some" of interactions with

the client's website. (*Id.* ¶ 24.) Based on the Complaint's allegations, Heap is "an extension" of Allstate and not a third party under Section 631. *See Graham*, 533 F.Supp.3d at 832; *Johnson*, 2021 WL 1312771, at *2 ("[F]or the reasons stated in *Graham v. Noom*, FullStory is not a third-party eavesdropper."); *Cinmar*, 2023 WL 2415592, at *9 ("Plaintiffs' allegations suggest a situation more akin to *Graham*, where the court found that a third party was not an eavesdropper where their software collected clients' data, kept the data on its servers, and allowed clients to analyze their data.").

Allstate expects that Plaintiff will argue that some California district court cases have held that third-party software companies can be eavesdroppers that are not entitled to the party exemption. *See, e.g.*, *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082 (C.D. Cal. 2021); *Saleh v. Nike*, 562 F.Supp.3d 503, 520 (C.D. Cal. 2021). These cases do not apply here. In *Revitch*, the recipient of the information was not a software-as-a-service provider, but rather an independent party who mined information from other websites and sold it. *See Graham*, 533 F.Supp.3d at 832 (distinguishing *Revitch*). Plaintiff makes no such allegations here. And in *Saleh* and *Yoon*, the service providers were alleged to have interpreted the data or acted "not merely as a passive device." *See Yoon*, 549 F.Supp.3d at 1082; *Saleh*, 562 F.Supp.3d at 520. Plaintiff does not make any allegation that Heap does anything with the data other than provide it to Allstate for Allstate's benefit.[3] (Compl. ¶¶ 23-24.) Yet even if these cases were factually applicable, their reasoning is against the weight of authority in California district courts in general and the courts in this district in particular. Furthermore, most recent decisions follow *Graham*, as stated above.

As an extension of Allstate, Heap is also entitled to the party exemption and cannot be liable for a violation of Section 631. Because there is no primary violation of Section 631, there is also no secondary liability for aiding and abetting under the fourth clause of Section 631(a). Thus, Count I should be dismissed.

///

///

---

[3] Elsewhere the Complaint inconsistently alleges that Allstate captures the data and provides it to Heap. (Compl. ¶ 43.)

**(b)** **Even if Heap is a Non-Party, Plaintiff Does Not Allege Facts Constituting a Violation of Section 631.**

**(i)** **Plaintiff Does Not Allege a Violation of Section 631(a)'s First Clause.**

Section 631(a)'s first clause imposes liability on "any person who . . . intentionally taps, or makes any unauthorized connection, . . . with any **telegraph or telephone wire, line, cable, or instrument**, including the wire, line, cable, or instrument of any internal telephonic communication system[.]" Cal. Penal Code § 631 (emphasis added). The Complaint asserts that Allstate and Heap each violated this provision of Section 631(a), (*see* Compl. ¶¶ 75.a., 76.a.), but the allegation fails as a matter of law.

"[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Williams*, 2022 WL 17869275, at *2; *Cinmar*, 2023 WL 2415592, at *5 ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet."); *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 825-26 (N.D. Cal. 2020) (reasoning that the first clause "expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument.") (internal quotation marks omitted). Section 631(a)'s "first clause does not apply to communications made through the computer functions of a smart phone or a Wi-Fi-enabled laptop." *Cinmar*, 2023 WL 2415592, at *1.

Here, Plaintiff's claim fails because he does not plead facts to demonstrate an unauthorized connection made with telegraph or telephone wire, line, cable, or instrument. The Complaint does not specifically allege how Plaintiff accessed Defendant Allstate's website. This fact alone is fatal to Plaintiff's claim. *See Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135 (E.D. Cal. 2021) (a plaintiff must "plausibly allege that a defendant intentionally tapped or made an unauthorized connection with a 'telegraph or telephone wire, line, cable, or instrument' to state a claim under § 631(a)'s first clause"); *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d at 825-26 (complaint that does not suggest the use of telegraph or telephone wires fails to state a claim under the first clause of Section 631(a)). Nonetheless, the Complaint does allege that Plaintiff accessed the website, Allstate.com, and "[d]uring Plaintiff's visit, Heap's 'Session Replay' feature created a video capturing Plaintiff's ***keystrokes and***

*mouse clicks on the website*." (Compl. ¶¶ 6, 21, 50 (emphasis added).) Plaintiff further alleges that "[t]he recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with a website" that utilizes Heap's Session Reply software. (Compl. ¶ 25.) Plaintiff's allegations demonstrate the alleged communications are *internet* communications. Such allegations do not state a claim under the first clause of Section 631(a). Cal. Penal Code § 631(a); *see Williams*, 2022 WL 17869275, at *2; *Cinmar*, 2023 WL 2415592, at *5.[4]

     **(ii)**  **Plaintiff Does Not Allege a Violation of Section 631(a)'s Second Clause.**

  Next, the Complaint asserts that Heap violated Section 631(a)'s second clause. (Compl. ¶ 76.b.) This allegation also fails as a matter of law.

  Section 631(a)'s second clause provides liability for any person "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the **contents or meaning** of any message, report, or communication while the same is **in transit** or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). "The second clause of section 631(a) requires that messages be intercepted while in transit." *Cinmar*, 2023 WL 2415592, at *9; *Mastel*, 549 F.Supp.3d at 1137 (granting dismissal because Plaintiff failed to adequately plead that defendant or the alleged third party intercepted Plaintiff's communication "while it was still in transit, i.e., before it reached its intended recipient."); *Rodriguez v. Google LLC*, No. 20-cv-04688, 2022 WL 214552, at *4 (N.D. Cal. Jan. 25, 2022) (same).

  Here, the Complaint does not plausibly allege that Heap intercepted Plaintiff's electronic communications while they were "in transit." The allegations of the Complaint are entirely unclear as to how and when interception occurs. In some instances, Plaintiff vaguely alleges that his "electronic

---

[4] Anticipating this argument, the Complaint alleges that "Section 631(a) is not limited to phone lines but also applies to newer technology such as computers, the Internet, and email." (Compl. ¶ 73.) However, Plaintiff's unsupported legal conclusion is against the weight of authority. *See Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135 (E.D. Cal. 2021) ("The court will therefore follow the overwhelming weight of authority requiring a plaintiff to plausibly allege that a defendant intentionally tapped or made an unauthorized connection with a telegraph or telephone wire, line, cable, or instrument to state a claim under § 631(a)'s first clause.") (internal quotations omitted); *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d at 825-26; *Williams*, 2022 WL 17869275, at *2.

communications" were "intercepted in real time." (Compl. ¶¶ 4, 6, 20, 21, 23, 41, 48, 49, 56, 57.) Plaintiff alleges that "Heap will ***automatically*** start to capture the data ***submitted*** in the form." (Compl. ¶ 22) (emphasis added); *see also id.* ¶ 25.) "***Heap*** in turn, ***provides this data to its clients***." (*Id.* ¶ 23 (emphasis added).) Yet elsewhere, the Complaint alleges that ***Allstate*** provides the data to ***Heap***. For instance, the Complaint alleges that "***Allstate . . . captures*** keystrokes, mouse clicks and other communications of visitors to its website, and ***Allstate supplies that information to Heap***." (*Id.* ¶ 43 (emphasis added).) Furthermore, the Complaint alleges that the code is embedded in Allstate's website, (*id.* ¶30), and customer interactions with Allstate's website are "sent to Heap," (*id.* ¶ 31). Based on these allegations, the consumer's interactions with the website cannot be intercepted by Heap while in transit (*i.e.* before the data is received by Allstate.com), but rather are alleged to have been recorded and sent to Heap *after* the data is received by Allstate.com. And although the Complaint alleges Plaintiff's communications were "intercepted" at least 15 times, "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Defendant] is intercepting [] data in transit." *Rodriguez*, 2022 WL 214552, at *2 (dismissing CIPA claim where plaintiffs alleged defendant "intercepts their data in transit" but the mechanism by which it does so is unclear). This is particularly true here, where the Complaint also alleges that Allstate– not Heap–captures the data, (Compl. ¶ 43), because "a party to a communication can record it (and it is not eavesdropping when it does)," *see Cinmar*, 2023 WL 2415592 (citation omitted).

Plaintiff's claim under the second clause also fails because Plaintiff predicates his claim, in part, on information not regarded as content. *Johnson*, 2021 WL 1312771, at *2 (dismissing Plaintiff's claim to the extent it is predicated on non-content information); *Graham*, 533 F.Supp.3d at 833 (same). Section 631(a) prohibits the unauthorized access of the "contents" or "meaning" of any communications. Cal. Penal Code § 631(a). The "content" of a communication is "the intended message conveyed by the communication." *Id.* Under CIPA, content does not include "record information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address and subscriber number or identity of a subscriber or customer." *Graham*, 533 F.Supp.3d at 833. Additionally, "the origin, length, and time of a call, or geolocation data are not content." *Id.* The Complaint alleges that Allstate and Heap "capture[d] the

keystrokes, mouse clicks, and other communications," including Plaintiff's identity, email address, zip code, date and time of each visit, duration of the visit, IP address, location, browser type, and operating system. (Compl. ¶¶ 43, 48, 50.) Such information is not regarded as content under Section 631(a). Thus, Plaintiff's claim fails to the extent the claim is predicated on non-content information (*e.g.*, keystrokes, mouse clicks, physical addresses, email addresses, date and time of visit, duration of visit, browser type, and the operating system on their device).

Count II fails to allege that Heap violated the second clause of Section 631(a).

### (iii) Plaintiff Does Not Allege a Violation of Section 631(a)'s Fourth Clause.[5]

The fourth clause of Section 631(a) provides liability for any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Penal Code § 631(a).

The Complaint fails to allege a violation of the fourth clause of Section 631(a). The Complaint alleges that Heap "**aided, agreed with, employed, and conspired with Heap** to implement Heap's technology, and to accomplish the wrongful conduct at issue." (*Id.* ¶ 76(c)) (emphasis added). This allegation alone is insufficient because Heap cannot aid, agree, employ, or conspire with itself to violate Section 631(a). And even assuming Plaintiff meant to allege Heap "conspired with **Allstate**," the claim still fails. A violation under the fourth clause is contingent upon a violation of any of the three preceding clauses. *Graham*, 533 F.Supp.3d at 833; *Mastel*, 549 F.Supp.3d at 1136. As set forth above, the Complaint does not allege a primary violation by either Allstate or Heap. *See* Sections V.A.1, V.A.2.a.-c, *supra*. There is no primary violation to serve as the basis of liability under the fourth clause of Section 631(a). Count I fails under all possible theories and should be dismissed.

### B. Count III Must Be Dismissed Because Plaintiff Does Not Allege a Claim for Invasion of Privacy Under the California Constitution.

#### 1. Because Plaintiff Does Not Allege a Wiretapping Claim, His Constitutional Privacy Claim Based on Wiretapping Fails.

Count III fails to state a claim for invasion of privacy under the California Constitution. The

---

[5] The Complaint does not allege that either Heap or Allstate violated the third clause of Section 631(a). (Compl. ¶¶ 75.a-b., 76.a.-c.)

Complaint alleges that "by implementing Heap's wiretaps on Allstate's Website, each Defendant intentionally invaded Plaintiff's and Class Member's privacy rights under the California Constitution." (Compl. ¶ 99.) "Because plaintiff did not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest under the California Constitution." *Williams*, 2022 WL 17869275, at *4-*5 (dismissing claim for invasion of privacy in session replay case because wiretapping claim failed); *Graham*, 533 F.Supp.3d at 836 (dismissing claim for invasion of privacy in session replay case "[b]ecause there was no plausible wiretapping by [the software provider], the plaintiffs did not plausibly plead that they possess a legally protected privacy interest").

## 2.     Plaintiff Does Not Allege a Constitutional Privacy Claim

Yet, even if the Section 631 claim survived this motion to dismiss, Plaintiff's Count III for invasion of privacy under the California Constitution fails. "The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Google Location Hist. Litig.*, 428 F.Supp.3d at 196. "Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *Saleh*, 562 F.Supp.3d at 525. To plead invasion of privacy under the California Constitution, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 39-40 (1994). Plaintiff does not plausibly allege any of these elements.

### (a)     Plaintiff Does Not Allege a Legally Protected Privacy Interest.

To establish an invasion of privacy claim, plaintiff must plead that he possesses a legally protected privacy interest. *In re Google Location Hist. Litig.*, 428 F.Supp.3d at 196. Whether a plaintiff possesses a legally protected privacy interest is "a question of law to be decided by the court." *Hill*, 7 Cal.4th at 401. "[T]here are only two classes of legally protected privacy interests under the California Constitution: (1) 'interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Yoon*, 549 F.Supp.3d at 1086 (quoting *Hill*, 7 Cal.4th at 35). Neither exists here.

Plaintiff's invasion of privacy allegations are wholly conclusory, alleging the legal test without

any factual support. Nonetheless, it appears that Plaintiff attempts to allege a claim for autonomy privacy by stating Plaintiff has a "strong interest in: . . . (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including the right to visit and interact with various Internet sites without being subjected to wiretaps." (Compl. ¶ 97.) California courts, however, have discussed autonomy privacy only in the context of cases alleging *bodily* autonomy. Courts have not found cause to extend the bodily autonomy line of cases to data autonomy. *In re Google Location Hist. Litig.*, 428 F.Supp.3d at 198; *Yoon*, 549 F.Supp.3d at 1086. Accordingly, Plaintiff has failed to plead a legally protected privacy interest on this theory.

Plaintiff also tries to allege a claim for informational privacy, based on his "strong interest in: (1) precluding the dissemination and/or misuse of their personal, confidential PII and PHI." (Compl. ¶ 97.) This conclusory allegation does not sufficiently allege what information Plaintiff contends was shared. *See Mastel*, 549 F.Supp.3d at 1142. And, courts reject claims that individuals have a cognizable privacy interest and a reasonable expectation of privacy in data collected ***while interacting with the defendant's website***. *Yoon*, 549 F.Supp.3d at 1086 (dismissing invasion of privacy claim premised on use of session replay software on defendant's website); *Saleh*, 562 F.Supp.3d at 524-25 (dismissing invasion of privacy claim premised on use of session replay software on defendant's website);[6] *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1193 (N.D. Cal. 2020) (no reasonable expectation of privacy where plaintiffs did not allege Facebook tracked location data after users had logged out); *In re Google Location Hist. Litig.*, 428 F.Supp.3d at 198 (no privacy interest where Google "only tracked and collected data during use of Google services").

Here, Plaintiff alleges that he voluntarily shared information his information on Allstate's website and that his information was captured only during his visit to Allstate's website. (*Id.* ¶¶ 43, 48-50.) Plaintiff does not allege facts showing the information was sensitive and confidential. *See Mastel*, 549 F.Supp.3d at 1142 (allegation that "personal and private messages" were read is insufficient). While Plaintiff alleges he did not intend for that information to be shared with Heap, (*id.* ¶ 103), Plaintiff does not plead that the information he provided to Allstate was "disseminated" or

---

[6] As discussed above, *Yoon* and *Saleh*'s analysis of the party exemption to Section 631 liability is against the weight of authority and incorrectly reasoned. *See* Section V.A.2.a., *supra*.

"misused" in any fashion. *See Mastel*, 549 F.Supp.3d at 1140. Plaintiff alleges that user's data was shared with Heap, (Compl. ¶ 103), however, Heap is acting as Allstate's service provider, and the information is used only for Allstate's purposes, (*id.* ¶¶ 23, 24). Indeed, the Complaint does not allege what is done with data, other than stating that Heap gives its clients (presumably Allstate here) "the full picture" of a user's interaction with Allstate's website. (*See id.* ¶ 24.)

### (b)   Plaintiff Does Not Have a Reasonable Expectation of Privacy.

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal.4th at 37 (citation omitted). Courts have found that there is no reasonable expectation of privacy in information voluntarily shared with a defendant's website. *Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *6 (N.D. Cal. May 13, 2020) (no reasonable expectation of privacy in information voluntarily supplied, even where the information is then used for purposes *beyond* what was expected); *see also In re Google Location Hist. Litig.*, 428 F.Supp.3d at 197-99 (dismissing invasion of privacy claims because user "profile" reflected only voluntarily provided information).

Plaintiff voluntarily shared information with Allstate, and any reasonable expectation of privacy is belied by Allstate's Privacy Policy, which discloses the alleged data collection and data sharing. Allstate's Online Privacy Statement discloses that Allstate collects personal information about consumers in several ways, including "directly from you . . . during the quoting . . . process[]," and through "service providers working on our behalf." (Franzen Decl., Ex. A.) Allstate discloses that it collects information "using analytics software, cookies and other tracking technologies," and states, "[w]hen you visit our Sites, we and our service providers automatically collect information about your use of and access to these Sites. We collect this information through a variety of tracking technologies . . . ." (*Id.*) Finally, Allstate discloses that it shares information with service providers and other third parties, including service providers that "provide services that support our online activities including providing tracking technologies, web hosting and analytics." (*Id.*) Under these circumstances, Plaintiff could not reasonably expect that his interactions with Allstate's website would be private.

### (c)   Plaintiff Does Not Allege a Highly Offensive Intrusion.

Plaintiff must also allege "conduct by the defendant that amounts to a serious invasion of the

16

protected privacy interest." *Hill*, 7 Cal. 4th at 35-37. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2021). Data collection practices "may be highly offensive if defendant disregards consumers' privacy choices while simultaneously h[olding] itself out as respecting them." *Saleh*, 562 F.Supp.3d at 525.

Plaintiff fails to plead any facts demonstrating a "highly offensive" invasion of privacy. At most, Plaintiff alleges that Heap and Allstate captured–not used, disseminated, or disclosed–information entered during his visit to Allstate's website. Plaintiff does not plead any facts supporting the conclusory allegations that this amounts to a "serious" invasion of privacy constituting "an egregious breach of the social norms underlying the privacy right." (*See* Compl. ¶¶ 105, 106.) And it does not.

Plaintiff does not allege that Allstate violated its Privacy Policy or deceived users into believing that his information would not be shared. Nor could he. As discussed above, Allstate discloses that it uses service providers like Heap to collect website activity. This is a common practice. *See McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (noting that "courts have characterized the collection and disclosure of [personal information about the users of a technology] as 'routine commercial behavior'") (citation omitted). Courts decline to hold that the collection and disclosure of such information is highly offensive conduct. *See In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968, 988 (N.D. Cal. 2014) ("courts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms"); *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012) (disclosure of digital identification information such as users' browsing histories "does not meet the standard set by California courts" to establish a common law claim for invasion of privacy); *In re iPhone App. Litig.*, 844 F.Supp.2d at 1063 (disclosure of unique device identifier, personal data, and geolocation information "does not constitute an egregious breach of social norms"); *Folgelstrom v. Lamp Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) (defendant's collection of the plaintiff's address without his knowledge or permission, and use of it to mail him

1   coupons and other advertisements, not an egregious breach of social norms, but rather "routine

2   commercial behavior."). In declining to find a violation of the constitutional right to privacy, the

3   *Folgelstrom* court highlighted cases in which the right has been recognized, including: a CHP officers'

4   internet dissemination of photographs of the decapitated corpse of an accident victim, *Catsouras v.*

5   *Dep't of Cal. Highway Patrol*, 181 Cal.App.4th 856 (2010); the gratuitous disclosure of a patient's

6   HIV status, *Urbaniak v. Newton*, 226 Cal.App.3d 1128 (1991); and the improper use of confidential

7   mental health records, *Susan S. v. Israels*, 55 Cal.App.4th 1290 (1997). *Folgelstrom*, 195 Cal.App.4th

8   at 992. Plaintiff's allegations fail to meet the "high bar" for a constitutional invasion of privacy claim.

9       **C.      Count II Must Be Dismissed Because Plaintiff Lacks Standing to Bring a UCL
              Claim and Plaintiff Fails to Adequately Allege a Claim Under the UCL.**

10      Plaintiff's UCL claim fails for two independent reasons: (1) he lacks standing under the statute,

11  and (2) he does not plausibly allege that Allstate engaged in any unlawful or unfair business practice.

12          **1.      Plaintiff Lacks Standing to State a Claim Under the UCL Because He Does
                    Not Allege Economic Injury.**

13

14      To have standing under the UCL, Plaintiff must "(1) establish a loss or deprivation of money

15  or property sufficient to qualify as an injury in fact, i.e., *economic injury*, and (2) show that that

16  economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen

17  of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (italics in original); Cal.

18  Bus. & Prof. Code § 17204. The requirements for UCL standing are considered "more stringent" than

19  for federal standing: "Whereas a federal plaintiff's 'injury in fact' may be intangible . . . [California's]

20  Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involve

21  'lost money or property.'" *Troyk v. Farmers Group, Inc*., 171 Cal.App.4th 1305, 1348 n.31 (2009).

22      Here, Plaintiff's Complaint is devoid of a single allegation of economic injury or damages. He

23  alleges only unspecified "harm resulting from Defendants' unfair conduct," (*see* Compl. ¶¶ 88-90),

24  making no mention of lost money or property as a result of Allstate's conduct. These allegations do

25  not establish an "injury in fact" for purposes of UCL standing. Nor can any loss of money or property

26  be inferred based on Plaintiff's allegations. *See, e.g.*, *Williams*, 2022 WL 17869275, at *4 (dismissing

27  UCL claim based on alleged session replay recording of interaction with website because plaintiff

28  does not allege a loss of money or property); *see also Claridge v. RockYou, Inc.*, 785 F.Supp.2d 855,

863 (N.D. Cal. 2011) ("plaintiff's claim that his PII constitutes lost 'money'…strains the acceptable boundaries of 'injury' under the [UCL]."); *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 849 (N.D. Cal. 2014) (noting courts have rejected a broad interpretation of "money or property" to include "a property interest in personal information, including the content of their messages") (collecting authority).

Plaintiff has not alleged the requisite loss of money or any other property interest. *See* Cal. Bus. & Prof. Code § 17204. Count II must be dismissed.

### 2. The Complaint Does Not Allege a Viable UCL Claim.

Even if Plaintiff had alleged economic injury (he did not), his claim fails for the independent reason that he does not plausibly allege a basis for liability under the UCL. The UCL has three prongs: unfair, unlawful, and/or fraudulent. *See* Cal. Bus. & Prof. Code § 17200; *Hodsdon v. Mars, Inc.*, 891 F. 3d 857, 865 (9th Cir. 2018). The Complaint does not attempt to assert a claim under the fraudulent prong of the UCL, (*see* Compl. ¶¶ 16-17); therefore, this motion addresses only the unlawful and unfair prongs of the statute.

### (a) The Complaint Does Not Allege a Claim Under the Unlawful Prong.

The UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices." *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (internal citations omitted). Where the underlying or "borrowed" claim fails, so does the UCL claim. *Ingels v. Westwood One Broadcasting Serv., Inc*., 129 Cal.App.4th 1050, 1060 (2005); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178 (2001) (noting a UCL claim based on "unlawful" conduct will "stand or fall depending on the fate of the antecedent substantive causes of action.").

Plaintiff alleges that Allstate's conduct is "unlawful" because it allegedly "violates CIPA, Cal. Penal Code § 631 [Count I], and Plaintiff's . . . rights under the California Constitution [Count III]." (Compl. ¶ 85.) As explained above, those claims are fatally deficient. *See* Sections V.A, V.B., *supra.* Because Plaintiff has not alleged any valid underlying violation of law, Plaintiff has not alleged a violation of the UCL's "unlawful" prong. *See, e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718 (2001) (no "unlawful" UCL claim where plaintiff did not state an underlying violation of any statute or law); *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d at 984-85

1   ("derivative UCL [unlawful] claim" fails where plaintiff did not allege underlying violation of law).

2                    **(b)       The Complaint Does Not Allege a Claim Under the Unfair Prong.**

3                            **(i)       The Complaint Does Not Allege a Claim Under the Unfair
                                        Prong Because It Does Not Allege a Claim Under the
4                                       Unlawful Prong Based on the Same Conduct.**

5           "Courts in this district have held that where the unfair business practices alleged under the

6   unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and

7   unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other

8   two prongs of the UCL do not survive." *Mai v. Supercell Oy*, --- F.Supp.3d ----, No. 20-cv-05573,

9   2023 WL 25713, at *6 (N.D. Cal. Jan. 3, 2023) (dismissing "unfair" UCL claim based on same conduct

10  as "unlawful" UCL claim where "unlawful" UCL claim was dismissed); *see also Romoff v. Gen.*

11  *Motors LLC*, 574 F.Supp.3d 782, 789-90 (S.D. Cal. 2021) (dismissing "unfair" UCL claim based on

12  same conduct as "unlawful" and "fraudulent" UCL claims, when "unlawful" and "fraudulent" UCL

13  claims were dismissed); *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104-05 (N.D. Cal. 2017)

14  (same); *Eidmann v. Walgreen Co.*, 522 F.Supp.3d 634, 647 (N.D. Cal. 2021) (same).

15          Plaintiff's unfair UCL claim is based on Defendant's alleged "wiretapping," purportedly in

16  violation of CIPA and the California Constitutional right to privacy. (Compl. ¶¶ 86-87; *see also*

17  Compl. ¶ 88 (identifying the "practice of wiretapping" as the "unfair conduct").) Plaintiff's unlawful

18  UCL claim is based on Defendants' alleged wiretapping in violation of CIPA and the California

19  Constitutional right to privacy. (Compl. ¶ 85; *id.* ¶ 99 (claiming "wiretaps" invade Constitutional

20  right to privacy).) The Complaint alleges no other conduct by Defendants. Therefore, the unfair

21  business practice alleged in support of the unfair prong "overlap[s] entirely" with the business

22  practice addressed in the unlawful prong of the UCL claim. Because the unlawful UCL claim fails,

23  "the unfair prong of the UCL cannot survive." *See Mai*, 2023 WL 25713, at *6. Count II must be

24  dismissed.

25                           **(ii)      The Complaint Does Not Sufficiently Allege Facts
                                        Supporting a Claim Under the Unfair Prong.**

26          "Under the UCL's 'unfair' prong, the test for liability in consumer suits is 'in flux.'" *Herron*

27  *v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1177 (N.D. Cal. 2013). "[A] split of authority has developed

28  concerning the standard for consumer claims under the unfairness prong of the UCL." *Id.* at 1178.

Some courts employ the "*South Bay* balancing test,"[7] which requires that the conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and the utility of that conduct is outweighed by the harm to the consumer. *Herron*, 924 F.Supp.2d at 1177-78 (collecting authority). Other courts employ the "*Cel-Tech* test,"[8] which requires that "an unfair business practice must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Herron*, 924 F.Supp.2d at 1177-78; *see also Hadley*, 243 F.Supp.3d at 1104. Other courts employ both tests. *See, e.g.*, *Teton Global Invest. LLC v. LC Invest. 2010*, No. 20-cv-01756-AJB-MSB, 2021 WL 5861565, at *2 (N.D. Cal. Aug. 11, 2021); *see also Herron*, 924 F.Supp.2d at 1177-78 (discussing split and collecting authority).

If the Court considers both tests for an unfair UCL claim,[9] "a plaintiff needs to plead conduct that either: (1) 'offends an established public policy,' or (2) 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' and the utility of that conduct is outweighed by the harm to the consumer." *Teton Global Invest.*, 2021 WL 5861565, at *2. A plaintiff alleging unfair business practices must state the supporting facts "with reasonable particularity." *Khoury v. Maly's of California*, 14 Cal.App.4th 612, 619 (1993).

The Complaint recites the legal elements–without any factual support–for both tests. (*See* Compl. ¶¶ 86-88.) Nonetheless, the Court need not determine which test applies because Plaintiff fails to allege a UCL claim regardless of the test employed.

### *Cel-Tech Public Policy Test*

To determine if a practice is "unfair," courts "may not apply purely subjective notions of fairness." *Cel-Tech*, 20 Cal.4th at 184, 186-87. Unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* To be sufficiently

---

[7] The test derives its name from *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 886 (1999).

[8] The test derives its name from *Cel-Tec Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999).

[9] For purposes of this Motion to Dismiss, Allstate argues that Plaintiff's claim fails under either test. This argument is not a concession that Plaintiff can prove his claim under either test. Allstate expressly reserves the right to argue that one test is applicable to Plaintiff's consumer claims to the exclusion of the other.

1    "tethered" to a legislative policy, there must be "a close nexus between the challenged act and the

2    legislative policy." *Hodsdon*, 891 F.3d at 866.

3        Here, Plaintiff purports to tether his unfair business practices claim to "California's

4    constitutionally and legislatively declared public policy in favor of production [sic] of consumer

5    privacy, including as is reflected in the CIPA and the California Constitution." (Compl. ¶ 86.) Yet, the

6    Complaint does not explain how or why the alleged session replay recording of a consumer's

7    interaction with its website violates the "public policy" embodied in either of these statutes, and thus

8    the claim should be dismissed. *See Teton Global Invest.*, 2021 WL 5861565, at *2-*3 (dismissing

9    conclusory UCL claim); *Wright v. Charles Schwab & Co., Inc.*, No. 20-cv-05281, 2020 WL 6822887,

10   at *5 (N.D. Cal. Nov. 20, 2020) (dismissing unfair UCL claim merely reciting the elements of the

11   various tests).

12       Nor is there any basis to find the alleged conduct violates the public policy embodied in CIPA

13   or the California Constitutional right to privacy. First, as described above, the alleged conduct does

14   not violate either law. For this reason alone, the claims should be dismissed. *See In re Google, Inc.*

15   *Privacy Policy Litig.*, 58 F.Supp.3d at 985 (dismissing UCL unfair prong claim because "[a] necessary

16   piece of the [UCL unfair prong] theory is that [defendant's] conduct violated Plaintiffs' right to privacy

17   under the California Constitution, yet they have not alleged facts to support that assertion"). Second,

18   Plaintiff has not alleged a sufficient nexus between the use of session replay and the "public policy in

19   favor of production [sic] of consumer privacy." For purposes of the Constitutional privacy claim,

20   courts reject claims that individuals have a cognizable privacy interest and a reasonable expectation

21   of privacy in data collected while interacting with the defendant's website. *See Section V.B.*, *supra*.

22   Moreover, courts have characterized internet data collection as a "routine commercial behavior."

23   *McCoy*, 2021 WL 405816, at *7. For purposes of the CIPA "public policy," courts reject claims that

24   session replay violates CIPA. *See Section V.A.*, *supra*.

25       Furthermore, much of the information Plaintiff contends was improperly collected,

26   (*e.g.*, keystrokes, mouse clicks, physical addresses, email addresses, date and time of visit, duration of

27   visit, browser type, and the operating system on their device), is not even considered "content" subject

28   to Section 631(a)'s protections. *See Graham*, 533 F.Supp.3d at 833; *Johnson*, 2021 WL 1312771, at

1   \*2. Plaintiff voluntarily provided his information to Allstate, Allstate's Privacy Policy discloses that

2   information may be shared with service providers, and under the CIPA case law, Heap is not a third-

3   party to the communication. There is no "legislatively declared policy" against using software to track

4   consumer activity online. Indeed, courts in this district have found "no wrongdoing" in using session

5   replay software like Heap's to analyze consumer data. *See, e.g.*, *Graham*, 533 F.Supp.3d at 831.

6   Plaintiff's allegations fall far short of tethering the use of session replay to a violation of a legislative

7   policy to protect consumer privacy.

8   ### *South Bay Balancing Test*

9   Under the balancing test, a plaintiff must show the defendant's conduct "'is immoral, unethical,

10  oppressive, unscrupulous or substantially injurious to consumers' and the utility of that conduct is

11  outweighed by the harm to the consumer." *Teton Global Invest.*, 2021 WL 5861565, at \*2.

12  Again, the Complaint's allegations are wholly conclusory. The Complaint makes no effort to

13  allege *facts* supporting unfairness. The Complaint makes a threadbare assertion that "Defendants acted

14  in an immoral, unethical, oppressive, and unscrupulous manner by knowingly wiretapping Plaintiff's

15  and class member's communications of their private personal information without their consent."

16  (Compl. ¶ 87.) Plaintiff's mere recitation of this unfairness test is insufficient, as Plaintiff fails to allege

17  any facts as to *how* Allstate's alleged conduct was immoral, unethical, oppressive, or unscrupulous.

18  (*See id.*) Plaintiff asserts only generally that "[t]he practice of wiretapping private

19  communications…harms the public at large." (Compl. ¶ 88.) This conclusory allegation is insufficient.

20  *Cf. Wright v. Charles Schwab & Co., Inc.*, No. 20-cv-05281, 2020 WL 6822887, at \*5 (N.D. Cal. Nov.

21  20, 2020) (allegations including that defendant's "wrongful conduct is substantially injurious to

22  consumers, offends legislative-declared policy, and is immoral, unethical, oppressive, and

23  unscrupulous. . . . The gravity of [defendant's] wrongful conduct outweighs any alleged benefits

24  attributable to such conduct" are conclusory and insufficient to state a claim); *Teton*, 2021 WL

25  5861565, at \*3 (rejecting unfair UCL claim because allegations are conclusory, threadbare recitals of

26  the elements . . . supported by mere conclusory allegations).

27  Nor do the Complaint's allegations demonstrate the test could be met. First, as discussed above,

28  the alleged conduct does not violate any law, and Plaintiff fails to state any claim. The allegations of

the Complaint do not establish "wiretapping," which Plaintiff contends is the wrongful conduct. *See* Section V.A., *supra*. Furthermore, courts in this district have found "no wrongdoing" in using session replay software to analyze consumer data. *See, e.g.*, *Graham*, 533 F.Supp.3d at 831. Accordingly, the conduct is not immoral, unethical, oppressive, or unscrupulous and does not harm consumers.

## VI.   CONCLUSION

For the foregoing reasons, Allstate respectfully requests the Court dismiss all Plaintiff's claims in the Complaint, in their entirety and with prejudice.

DATED: May 31, 2023

WINSTON & STRAWN LLP
MARGARET E. DAYTON
SHUI SUM LAU

By:   */s/ Margaret E. Dayton*
Margaret E. Dayton (SBN 274353)
PEDayton@winston.com
Shui Sum Lau (SBN 345456)
SsLau@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90017-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY