**BERMAN TABACCO**
Joseph J. Tabacco, Jr. (State Bar No. 75484)
jtabacco@bermantabacco.com
Matthew D. Pearson (State Bar No. 235339)
mpearson@bermantabacco.com
Alexander S. Vahdat (State Bar No. 284963)
avahdat@bermantabacco.com
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Attorneys for Plaintiff*

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONRAD JAMES, individually and on behalf of all others similarly situated, | ) Case No. 3:23-cv-01931-JSC |
| | ) |
| Plaintiff, | ) **CLASS ACTION** |
| | ) |
| v. | ) **SECOND AMENDED** |
| | ) **CLASS ACTION COMPLAINT** |
| ALLSTATE INSURANCE COMPANY and HEAP INC. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| Defendants. | ) |
| | ) |

COMES NOW the Plaintiff, Conrad James, individually and on behalf of all others similarly situated, by and through his attorneys, and files this Second Amended Class Action Complaint against Defendants Allstate Insurance Company and Heap Inc.  In support thereof, Plaintiff alleges the following:

**NATURE OF THE ACTION**

1.      Allstate Insurance Company ("Allstate") offers consumers quotes for insurance policies if they fill out a form online at Allstate.com.  To obtain a quote, consumers must enter private information about themselves, including their personally identifiable information ("PII") and protected health information ("PHI").

2.      Allstate's co-perpetrator and co-defendant, Heap Inc. ("Heap"), is a marketing software-as-a-service ("SaaS") company.  Heap's business model involves entering into voluntary partnerships with various companies and providing its "Digital Insights Platform" to these clients for a fee.  Heap describes itself as a "user behavioral analytics product and service. . .that allow[s] businesses and websites to collect and analyze data about how their users are interacting with their services."  Heap admits that it provides this service "by collecting data on what users are doing, including but not limited to what webpages they visit, what users click on, where those users are located, what browser or platform those users are using, and many other forms of behavioral or personal data."[1]  In fact, Heap's CEO describes Heap's approach as a "digital vacuum cleaner."[2]

3.      Allstate is one of Heap's clients.  Heap's "Digital Insights Platform" "automatically collects, organizes, *analyzes*, and connects customer data. . . ."[3]  Heap reads and analyzes its clients' customer data as the data is being transmitted by Heap's client's customers, including Allstate.  For example, using its "Live data feed" service, Heap's clients' customer data "flow[s]

---

[1] Heap, *Privacy Policy*, Heap, https://www.heap.io/privacy (last visited February 1, 2024).

[2] Diginomica, *How Heap.io's 'digital vacuum cleaner' can improve digital experiences by analyzing customer journeys*, Diginomica, https://diginomica.com/how-heapios-digital-vacuum-cleaner-can-improve-digital-experiences-analyzing-customer-journeys (last visited February 1, 2024).

[3] Heap, *Heap Earns Top Spot in Glassdoor 2019 Best Places to Work Awards*, Heap, https://www.heap.io/blog/glassdoor-2019-best-places-to-work-awards (last visited February 1, 2024) (emphasis added).

in real-time into Heap."[4]  After Heap "capture[s] and ingest[s]"[5] this customer data, Heap then provides the information back to its customers along with behavioral analytics tools and assessments.

4.      Both Allstate and Heap benefit financially from Allstate's use of Heap's "Digital Insights Platform."  Heap benefits in several ways.  First, it benefits financially when Allstate purchases its services.  Second, and more importantly, it benefits by using Plaintiff's and the putative class members' information, such as PII and/or PHI, for its own commercial purposes. Heap reads, learns, and analyzes its clients' customer data in order to create whitepapers used in marketing its services to current and prospective clients.[6]  On information and belief, Heap uses its customers' data to leverage business relationships with other service providers.[7]  One example involves Heap storing and sharing this data back to its customers through a third-party's service that "has become a multi-million dollar product offering" for Heap and "has resulted in about a 30% lift in contract sizes."[8]  Finally, and most importantly, Heap acknowledges that it possesses the ability to "sell or distribute" Allstate's customer data to "authorized sub-processors or integration partners [Allstate] configure[s]."[9]

5.      On the other hand, Allstate benefits financially from sharing its customers' data with Heap because Heap's analytics tools allow Allstate to harvest extra data about its website

---

[4] Heap, *How do I get real-time data in Heap*, Heap, https://help.heap.io/data-management/data-management-faqs/how-do-i-get-real-time-data-in-heap/ (last visited February 1, 2024).

[5] *Id.*

[6] Heap, *Digital Experience Insights Report*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report-installment-3 (last visited February 1, 2024) ("Three years. A thousand customers. Millions of queries, millions of events. ***Here's what we learned.***") (emphasis added).

[7] Diginomica, *How Heap's integration with HubSpot helps companies activate their customer journey data*, Diginomica, https://diginomica.com/how-heaps-integration-hubspot-helps-companies-activate-their-customer-journey-data (last visited February 1, 2024) (noting that Heap offers two-way integration with "HubSpot. . .Salesforce. . .Braze, AB Tasty, Intercom, Marketo, Iterable, Optimizely, and many others" and "sends Heap customer data to data warehouse platforms, such as Redshift, BigQuery, Snowflake, and S3").

[8] Snowflake, *Heap Delivers Superior Customer Experiences and Drives Revenue with Snowflake Marketplace*, Snowflake, https://www.snowflake.com/blog/heap-delivers-superior-customer-experiences/ (last visited February 1, 2024).

[9] Heap, *Heap Trust Center (Security Statement)*, Heap, https://www.heap.io/trust-center (last visited February 1, 2024).

visitors and optimize its lead generation efforts. This information increases the value of those website leads, which Allstate then uses for its own benefit by improving its services, marketing additional products to its website visitors, and by sharing the data with its marketing partners, insurance agents, brokers, and other third parties.[10] Thus, both Heap and Allstate benefit from Allstate's use of Heap's services.

6.      By installing Heap's "Digital Insight Platform" (including "autocapture" and "session replay") on its website, Allstate aided, agreed with, employed, or conspired with Heap to allow Heap to intercept, capture, record, read, learn, store, and/or share Plaintiff's PII and PHI. These tools provided Heap complete access to Plaintiff's PII and PHI simultaneously and in real time as Plaintiff was transmitting the information to Allstate through its website. Heap describes "session replay" as "everything a given user does on your website or application—mouse movements, scrolling, clicks, keyboard strokes, and more." "A Session Replay is actually a recreation of your digital experience from logged events (called mutations) to produce an event-by-event reproduction of the user journey."[11]

7.      Heap uses multiple spyware tools, such as heat mapping, scroll depth tracking, clickmaps, and attention maps, to track Plaintiff's and putative class members' movements across webpages.[12] Heap's capture of data and information even provided Allstate and Heap with the ability to identify browsing sessions by user.[13]

8.      Website owners, like Allstate, simply add Heap's JavaScript[14] into the source code of their website. This benefits Allstate by providing it with analytics and insights about visitors to its website. However, the source code allows Heap to tap, read, learn the contents of, record, use,

---

[10] Allstate, *Your Privacy is Our Priority*, Allstate, https://www.allstate.com/privacy-center (last visited February 1, 2024).

[11] Heap, *What is Session Replay and Recording*, Heap, https://www.heap.io/topics/session-replays-recordings

[12] Heap, *Heatmaps: Ignite your insights*, Heap, https://www.heap.io/platform/heatmaps (last visited February 1, 2024).

[13] Heap, *Users overview*, Heap, https://help.heap.io/charts/chart-types/users-overview/ (last visited February 1, 2024).

[14] JavaScript is a programming language commonly used in website development to add features and functions to a website.

disclose, analyze, and/or make reports of a visitor's keystrokes and other actions on Allstate's website. As alleged herein, Heap uses this information for its own commercial purposes. Heap, with Allstate's aid, agreement, knowledge, and/or assistance, invaded Plaintiff's privacy and the privacy interests of the putative class by tapping or eavesdropping on Plaintiff's private communications with Allstate and by intercepting, capturing, reading, learning, and/or recording Plaintiff's confidential information and then using that confidential information for its own commercial purposes.

9. Allstate embedded Heap's JavaScript in the source code on its website. Every time someone visits Allstate's website, the script is deployed onto their cell phone, computer, laptop, tablet, or other device for the purpose of watching and recording their interactions with Allstate's website. Heap's spyware was active on Allstate's website and allowed Allstate and Heap to surreptitiously observe, intercept, capture, read, learn, and/or record visitors' keystrokes, mouse clicks, and other electronic communications, including their entry of PII and PHI.

10. When users seeking an insurance quote enter private information on Allstate.com, Heap intercepts, captures, reads, learns, and/or records those interactions in real time. Neither Allstate nor Heap notified Plaintiff or other users of this activity by Heap and neither Allstate nor Heap obtained Plaintiff's prior consent. The surreptitious tapping, capturing, recording, reading, learning, and/or reviewing of Plaintiff's and putative class members' communications is the electronic equivalent of "looking over the shoulder" of each visitor to Allstate's website.

11. The communications Allstate shares with Heap included Plaintiff's geolocation and Plaintiff's PII and PHI, such as name, email address, age, height, weight, information regarding medical conditions, prescribed medications, and hospitalization history. In November and December, 2022, Plaintiff accessed the Allstate website through his computer and mobile phone and used the Allstate website to search for an insurance quote, entering private information into the online form at Allstate.com. During Plaintiff's visit, Defendants Allstate and Heap recorded Plaintiff's electronic communications in real time and used the intercepted data to learn his identity, email address, zip code, date of birth, height, weight, use of prescription medications and

1  tobacco products, and other PII and PHI.  Plaintiff did not consent to Heap's involvement in

2  obtaining, reading, analyzing, storing, and/or using his PII and PHI.

3      12.     By wiretapping and intercepting Plaintiff's and other Allstate website users'

4  communications, Defendant Heap violated the California Invasion of Privacy Act ("CIPA"), Cal.

5  Penal Code § 631, and invaded Plaintiff's and putative class members' privacy rights in violation

6  of the California Constitution.  By aiding, agreeing, employing, or conspiring to allow Heap to

7  wiretap and intercept Plaintiff's and other Allstate website users' communications, Defendant

8  Allstate also violated the CIPA and invaded Plaintiff's and class members' privacy rights.

9      13.     Plaintiff brings this action on behalf of himself and a class of all Californians whose

10  electronic communications were intercepted by Defendants through Allstate's use of Heap's

11  "Digital Insights Platform" on its website.

12                           **JURISDICTION AND VENUE**

13      14.     This Court has jurisdiction over the claims alleged in this Class Action Complaint

14  pursuant to 28 U.S.C. § 1332(d)(2)(A).

15      15.     Allstate does business throughout the State of California including in the County

16  of San Francisco, and its registered agent for service is located at 28 Liberty Street New York, NY

17  10005.  The unlawful conduct of interception, tracking, and sharing consumers' online activity

18  and private information without their consent as alleged herein occurred in the State of California,

19  including in the County of San Francisco, and was intended and did substantially affect business

20  and commerce within this State.

21      16.     Heap does business throughout the State of California including in the County of

22  San Francisco, and its principal place of business is located at 225 Bush Street, Suite 200, San

23  Francisco, CA 94104.  The unlawful conduct of intercepting, tracking, and sharing consumers'

24  online activity and private information without their consent as alleged herein occurred in the State

25  of California, including in the County of San Francisco, and was intended and did substantially

26  affect business and commerce within this State.

27

28

17.    Pursuant to 28 U.S.C. § 1391, this Court is a proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claim herein occurred in this District.

18.    This Court has personal jurisdiction over Defendants because Plaintiff's claims arise out of Defendants conducting, engaging in, and/or carrying on business in California, and violating the laws of California. Defendants also purposefully availed themselves of the opportunity of conducting activities in the State of California by marketing its products within the State and intentionally developing relationships with customers within the State.

## DIVISIONAL ASSIGNMENT

19.    Pursuant to Northern District of California Civil Local Rules 3-2(c), 3-2(d), and 3-5(b), assignment to the San Francisco Division of this District is proper because Defendant Heap's principal office is located in San Francisco, California, and a substantial part of the events or omissions giving rise to the claim occurred in San Francisco County.

## PARTIES

20.    Plaintiff Conrad James is an adult resident citizen of the State of California and resides in San Diego, California.

21.    Allstate is an Illinois company with its principal place of business at 2775 Sanders Road Northbrook, IL 60062.

22.    Allstate is an insurance company that promises its customers that "You're in Good Hands with Allstate."[15]  Among other services, Allstate provides consumers with products such as life insurance, auto insurance, homeowners insurance, and business insurance by enabling consumers to make purchases online or through an agent.

23.    Allstate does business throughout California and the entire United States.

24.    Allstate owns and operates Allstate.com.

25.    Defendant Heap is a Delaware corporation with its principal place of business at 225 Bush Street, Suite 200, San Francisco, CA 94104.

---

[15] Allstate, *Our Shared Purpose*, Allstate, https://www.allstatecorporation.com/about/our-shared-purpose.aspx (last visited February 1, 2024).

26.     Heap is a SaaS company.  In connection with its services to website operators, Heap provides its "Digital Insights Platform" which monitors and records a website user's activity on a webpage.  This purports to increase the value of leads generated by independently capturing, storing, and documenting the information each lead provides and harvesting additional information about them such as their IP address and geolocation.

## FACTUAL ALLEGATIONS

### I.    DEFENDANT HEAP WIRETAPPED OR EAVESDROPPED ON PLAINTIFF'S ELECTRONIC COMMUNICATIONS

27.     Defendant Heap provides a variety of real-time software products through a "Digital Insights Platform" for companies that want to learn more about visitors to their websites and these visitors' behavior.[16]

28.     Through its "Autocapture" feature, Heap captures, records, and stores real-time consumer interactions with Allstate's website, including keystrokes, mouse clicks, and other electronic communications.[17]  Through its "Session Replay" feature, Heap allows Allstate "endless replays" of a moment-by-moment replay of what happened on the webpage in the order in which it happened, capturing what the consumer does on the page.[18]

29.     In a 2017 study by Princeton University researchers concerning similar technology, the researchers noted that "the extent of data collected by these services far exceeds user expectations; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[19]

30.     Enabling Heap's "Digital Insight's Platform" on Allstate's website allowed Heap to intercept, capture, read, learn, and record in real-time the keystrokes, mouse clicks, data entry, and other electronic communications of Plaintiff and other visitors to Allstate.com.  It also allowed

---

[16] Heap, *Why You Need a Digital Insights Platform*, Heap, https://www.heap.io/why-heap/digital-insights-platform (last visited February 1, 2024).

[17] Heap, *How Heap Works*, Heap, https://www.heap.io/why-heap/how-heap-works (last visited February 1, 2024).

[18] *Id.*.

[19] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom To Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

Heap to track real-time events, create historical-based reports, and generate other information described above. On information and belief, after eavesdropping in real-time on Plaintiff's interactions with Allstate's website, Heap created a video-like reproduction of Plaintiff's visits and provided them to Allstate.

31. On its website, Heap advertises that it "autocaptures" this data immediately and gives you "the full picture, and then some" by "a single snippet of code."[20]

32. The recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with a website that contains the JavaScript. Heap read, or attempted to read, or to learn the contents of Plaintiff's communications with Allstate in real-time while the information was being transmitted from Plaintiff's devices to Allstate's servers. Pursuant to its Master Services Agreement with Allstate, Heap read, or attempted to read, or to learn the contents of Plaintiffs' communications as part of its data processing service. Section 3.3. of Heap's Master Services Agreement provides that its customers "grant[] Heap the right to host and process Customer Data for providing and improving the Services and to support Customer under this Agreement."[21] Schedule 1 of Heap's Data Processing Addendum to the Master Services Agreement provides how it will process "Customer User data." Heap recognizes that the "frequency of transfer" is "continuous"[22] and Heap admits that through its "Live data feed" service, its clients' customer data "flow[s] in real-time into Heap."[23] After Heap "capture[s] and ingest[s]"[24] this customer data, Heap then provides the information back to its customers along with behavioral analytics tools and assessments.

33. Heap further acknowledges that the "nature of the processing" includes "analysing data to identify behavioral patterns" and that the "purpose/s of the data transfer and further

---

[20] Heap, *The Most Complete Data Capture on the Market*, Heap, https://www.heap.io/platform/capture (last visited February 1, 2024).

[21] Heap, *Master Services Agreement*, Heap, https://www.heap.io/legal/heap-master-services-agreement (last visited February 1, 2024).

[22] Heap, *Data Processing Addendum,* Heap, https://assets.ctfassets.net/jicu8fwm4fvs/6AWQISW2unz8gv0mqnhGXj/354a04c377c0ca867276d415d31cb9e9/Heap_DPA_Dec_2022.pdf (last visited February 1, 2024).

[23] Heap, *How do I get real-time data in Heap*, Heap, https://help.heap.io/data-management/data-management-faqs/how-do-i-get-real-time-data-in-heap/ (last visited February 1, 2024).

[24] *Id.*

processing" includes producing "aggregate behavioral reporting" and "reporting on specific customer-defined behavioral patterns of interest over the aggregate of the captured end-user behavioral data."[25]  Heap could not process, analyze, or report on Customer User data without reading or attempting to read or to learn the contents or meaning of the data that it is processing and analyzing.  Similarly, it could not produce any behavioral reporting without reading or attempting to read or to learn the contents or meaning of the Customer User data that it is reporting on.  Finally, it could not produce three Digital Experience Insight Reports without reading or attempting to read or to learn the contents or meaning of the data contained in those reports.[26]

## II.   DEFENDANT ALLSTATE AIDED, AGREED WITH, EMPLOYED, OR CONSPIRED TO ALLOW HEAP TO WIRETAP OR EAVESDROP ON PLAINTIFF'S ELECTRONIC COMMUNICATIONS

34.   Allstate provides a variety of insurance products.  To obtain a quote on an Allstate insurance plan, consumers fill out a form online at Allstate.com.  Users are prompted to select the "get a quote" button.  Allstate uses Heap's "Digital Insights Platform" on Allstate.com.  On information and belief, while browsing Allstate.com, Plaintiff's web browser sent "GET requests" to Allstate's server.  On information and belief, the server responded by sending HTML code to Plaintiff's web browser.  On information and belief, the browser interpreted the code to allow the website to appear on Plaintiff's screen.  On information and belief, Allstate's webpage also included JavaScript that sent "GET requests" to Heap's server unbeknownst to Plaintiff.  On information and belief, Heap's server responded by sending its own code to Plaintiff's web browser, loaded the code from Heap, created a unique visitor ID for Plaintiff's web browser, and

---

[25]        Heap,  *Data   Processing   Addendum*,  Heap, https://assets.ctfassets.net/jicu8fwm4fvs/6AWQISW2unz8gv0mqnhGXj/354a04c377c0ca867276 d415d31cb9e9/Heap_DPA_Dec_2022.pdf (last visited February 1, 2024).

[26] Heap, *Digital Experience Insights Report (v. 1)*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report ("we examined anonymized data from hundreds of customers.") (last visited February 1, 2024);

Heap, *Digital Experience Insights Report (v. 2)*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report-installment-2 ("we dug through millions of user events to see just how often funnels mislead teams into thinking they understand user behavior.") (last visited February 1, 2024);

Heap, *Digital Experience Insights Report (v. 3)*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report-installment-3 ("Three   years.   A   thousand customers.  Millions  of  queries,  millions  of  events.  Here's  what  we  learned.") (last visited February 1, 2024).

instructed Plaintiff's web browser to begin simultaneously transmitting all information to Heap as Plaintiff navigated through Heap's website.  The JavaScript, which is embedded into the source code of Allstate's website, is shown in the red box below.

```
<script src="https://ads.revjet.com/analytics?acu=3280"></script>
<script type="text/javascript" async src="https://cdn.heapanalytics.com/js/heap-4138728049.js"></script>
</script> </script>
```

35.     After selecting the "get a quote" button, consumers are required to answer multiple questions, including questions about their medical health.  Plaintiff's responses were automatically or simultaneously transmitted to Heap and Heap intercepted, captured, read, learned, or recorded this information for its own commercial purposes as well as for Allstate's purposes.   Plaintiff communicated to Allstate information including, but not limited to:

  a.     Name, zip code, gender, and age;

  b.     Email address;

  c.     Height and weight;

  d.     Use of prescription medications and tobacco products;

  e.     Medical conditions such as cardio or heart history;

  f.     The use of marijuana and THC;

  g.     Use of illegal drugs; and

  h.     Criminal record history.

36.     Heap is not an affiliate or extension of Allstate.  Instead, it is a third-party.  Plaintiff did not know—and nothing on the face of Allstate.com gave him any indication—that his answers in the insurance quote form were being monitored, intercepted, captured, read, learned, recorded, and stored by a third-party or that Heap would use his information for its own commercial purposes.

37.     Without Plaintiff's consent, Allstate enabled Heap to monitor, intercept, read, learn, and record his interactions with Allstate.com as it asked questions to obtain the above information. The information—including the information listed in Paragraph 35, above—was automatically captured in real-time by Heap using its "autocapture" and "Live data feed" in conjunction with its session replay technology as the information was transmitted between Plaintiff's devices and

Allstate's servers.  Only after answering the questions seeking the information listed in Paragraph 35 could Plaintiff obtain a quote for insurance from Allstate.

38.    Plaintiff did not consent to the viewing, recording, and storing of his information by Heap and did not consent to Allstate's sharing of his information with Heap.  Plaintiff visited Allstate's website to obtain an insurance quote and was not put on notice of its Privacy Statement, the Terms of Use, or provided with any other notification that the private and sensitive information he was submitting was being monitored, intercepted, captured, read, learned, recorded, and/or stored by Allstate or Heap or shared by Allstate with Heap or any other third party.

39.    At the beginning of the online quote process, there is nothing that informs Allstate's customers that their information is being monitored, intercepted, captured, read, learned, recorded, shared, and/or stored by or with any entity other than Allstate.[27]

40.    Rather, only those consumers who take extra steps in the online quote process are offered the opportunity to click on a hyperlink labeled "Why do we ask?" and then learn why Allstate collects certain information:



---

[27]    Allstate, *Let's start with the* basics, Allstate, https://purchase.allstate.com/onlineshopping/warmup/1 (last visited February 1, 2024).



**Why do we collect this information?**

In this section, we will be asking about your health, status, and life activities, in order to assess your level of risk. This allows us to personalize your quote.

41.    However, the above notice does not notify users that the information submitted during the insurance quote form process has been monitored, intercepted, captured, read, learned, recorded, shared with, and/or stored in real time by Heap.

42.    Allstate did not obtain consent from Plaintiff or other visitors to its website to allow Heap to monitor, intercept, capture, read, learn, record, use, and/or store their private and sensitive information submitted to Allstate in order to obtain an insurance quote.

43.    Only if a user were able to find, click, and read through its "Allstate Online Privacy Statement" would a consumer learn that Allstate "may share your personal information with [its] affiliates for business purposes."  In addition, the Privacy Statement provides that Allstate "may also share personal information about you with third parties whenever you consent to or direct such sharing."

44.    However, Plaintiff and others who filled out an insurance quote form and provided their private and sensitive information to Allstate were not put on notice of Allstate's Terms of Use and Privacy Statement.



45.    Allstate's Terms of Use and Privacy Statement can only be accessed through a hyperlink that is located, among a multitude of links, in small letters at the very bottom of the page.

46.     By the time Plaintiff and other consumers began to complete the online form, the monitoring and interception had already occurred and their personal information had already been captured, recorded, and stored by Heap without their knowledge or consent.  In other words, even if a user, such as Plaintiff, reaches the point where he or she is notified of Allstate's Terms of Use and Privacy Statement, decides to click through and review the Terms of Use and Privacy Statement, and then does not agree and leaves the website, that user's personal information has already been monitored, captured, intercepted, read, learned, and/or recorded by Heap in real time.

47.     Allstate failed to give Plaintiff and members of the putative class adequate notice that their form responses have been monitored, captured, intercepted, read, learned, and/or recorded by Heap and that their activity will continue to be monitored, captured, intercepted, read, learned, and/or stored by Heap going forward.

48.     At the time, Allstate knew that it captured the keystrokes, mouse clicks, and other communications of visitors to its website, and Allstate allowed Heap to monitor, capture, intercept, read, learn, access, and/or store that information and paid Heap to do this.

49.     Pursuant to an agreement with Heap, Allstate enabled Plaintiff's confidential information to be monitored, captured, intercepted, recorded, accessed, read, learned, and/or stored by Heap by voluntarily embedding Heap's JavaScript into its website at Allstate.com.   Under California law, this functions as a wiretap.  Allstate and Heap monitored, captured, intercepted, recorded, read, learned, and/or monetized valuable personal information of Plaintiff and members of the putative class without their consent.  Allstate recognized the value and market for this information, and Allstate used or sold "leads" containing the intercepted information.  Heap, in addition to its own commercial uses of Plaintiffs' PII and/or PHI, was paid for a product that was designed to facilitate and increase the value of Allstate's leads.

## III.    SPECIFIC FACTS DETAILING PLAINTIFF'S INTERACTIONS WITH ALLSTATE'S WEBSITE

50.     In November and December 2022, Plaintiff Conrad James accessed the Allstate website through his computer and mobile phone and used Allstate's website to search for an insurance quote. Plaintiff and the class used smart phones (cellular telephony with integrated

operating systems to enable web browsing) and/or personal computers or Wi-Fi-enabled laptops or tablets using a combination of cellular and landline telephony.  As such, the conversations with Defendant were transmitted from a "cellular radio telephone" and/or "landline telephone" as defined by CIPA.

51.    Plaintiff was in California on each occasion that he visited the website.

52.    During each visit, Allstate aided, agreed, employed, or conspired to allow Heap to intercept, capture, record, read, learn, and/or store Plaintiff's electronic communications in real time, using the intercepted data to attempt to learn the identity, email address, zip code, age, height, weight, use of prescription medications and tobacco products, and other PII and PHI of Plaintiff while he sought an insurance quote.  On information and belief, Allstate was aware that Heap would use Plaintiff's confidential information for its own commercial purposes.

53.    Plaintiff was unaware at the time that his keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and were being disclosed to Heap (a third party), nor did Plaintiff consent to share his private information with Heap.

54.    During Plaintiff's visits, Heap's autocapture and session replay technology captured or recorded Plaintiff's keystrokes and mouse clicks on the website.  It also captured the date and time of each visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, browser type, and the operating system on their device.

55.    Plaintiff did not receive notice of Allstate's Privacy Statement when he clicked "Get a quote," which initiated the interception of his responses on the form.

56.    Nor did Plaintiff provide informed consent when providing personal information that had already been intercepted, captured, recorded, read, learned, shared with, and/or stored by Heap without his knowledge or consent.

57.    Further, because Plaintiff was not adequately informed that his activity was being intercepted, captured, recorded, read, learned, shared with, and stored by Heap, Plaintiff also did not provide and could not have provided informed consent to the interception, capturing, recording, learning, reading, sharing, and storing of the answers he provided.

58.    Neither Allstate nor Heap told Plaintiff that his keystrokes, mouse clicks, and other communications were being intercepted, captured, recorded, read, learned, used, shared with, and/or stored by Heap.  Even Allstate's more limited disclosures were not made, if at all, until *after* the interception had already begun.

59.    Plaintiff did not consent to being wiretapped on Allstate's website or to the interception, capture, recording, reading, learning, use, sharing, and/or storing of his communications by Heap.  Furthermore, any purported consent was ineffective because (i) the wiretapping began from the moment Plaintiff accessed Allstate's website; and (ii) Allstate's Privacy Statement did not disclose the wiretapping, Heap's interception, capture, recording, reading, learning, and/or storing of Plaintiff's PII or PHI, or that Allstate was sharing Plaintiff's sensitive information with a third-party.

60.    At no time before or during Plaintiff's browsing of its website did Allstate disclose that it or Heap would be intercepting, capturing, and/or recording Plaintiff's activities in real time or that Heap would be reading or learning about Plaintiff's PII and PHI.  Even if Allstate had disclosed its wiretapping at issue in its Privacy Statement, Allstate still acted without Plaintiff's consent because Allstate did not ask for Plaintiff's consent before it aided, agreed with, employed, or conspired with Heap in eavesdropping and wiretapping his communications.

**CLASS ACTION ALLEGATIONS**

61.    Plaintiff brings this lawsuit as representative of a class of all resident citizens of California who visited Allstate.com and provided personal information on Allstate's form to receive a quote for insurance and whose information was intercepted and disclosed to Heap.

62.    The "Class Period" begins four years preceding the date of the filing of the initial complaint and continues to the present.

63.    Plaintiff reserves the right to modify, change, or expand the class definition as appropriate based on further investigation and discovery obtained in the case.

64.    Excluded from the class are Defendants, their employees, agents, and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel.

65.    This action may be properly maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.

66.    **Numerosity:**  The class is sufficiently numerous because it consists of at least thousands of individuals, making joinder impractical.

67.    **Commonality and predominance:** A well-defined community of interest exists among class members.  Common questions of law and fact exist with regard to each of the claims and predominance over questions affecting only individual class members.  Questions common to the class include:

      a.    whether Defendant Allstate violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, by aiding, agreeing with, employing, or conspiring with Heap to wiretap Plaintiff's communications with Allstate;

      b.    whether Defendant Heap violated the CIPA, Cal. Penal Code § 631;

      c.    whether Defendants invaded Plaintiff's and putative class members' privacy rights in violation of the California Constitution; and

      d.    whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

68.    **Typicality:**  The claims of the named Plaintiff are typical of the claims of the class that he represents and arise out of the same standard form improper conduct perpetrated on members of the class.

69.    **Adequacy of representation:**  Plaintiff will fairly and adequately protect the interests of the members of the class that he represents and has no interest antagonistic to those of other class members.  Plaintiff has retained class counsel competent to prosecute class actions and is financially able to represent the class.

70.    **Superiority:**  The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The common questions of law and fact regarding Defendant's conduct and the interpretation of form documents devised by Defendant predominate over any questions affecting

only individual class members.  The interest of judicial economy strongly favors adjudicating the claims as a class action rather than on an individual basis because the amount of any individual's damages is too small to make it practicable to bring individual lawsuits.  The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives.

71.     Class action treatment is proper and this action should be maintained as a class action because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

72.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Class-wide treatment provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

**COUNT I**
**Violation of the California Invasion of Privacy Act ("CIPA")**
**Cal. Penal Code § 631**

73.     Plaintiff repeats the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the class against Defendants.

75.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

1    Intentionally taps, or makes any unauthorized connection, whether physically,

2    electrically, acoustically, inductively or otherwise, with any telegraph or telephone

3    wire, line, cable, or instrument, including the wire, line, cable, or instrument of any

4    internal telephone communication system,

5    *Or*

6    Willfully and without the consent of all parties to the communication, or in any

7    unauthorized manner, reads or attempts to read or learn the contents or meaning of

8    any message, report, or communication while the same is in transit or passing over

9    any wire, line or cable or is being sent from or received at any place within this

10   state,

11   *Or*

12   Uses, or attempts to use, in any manner, or for any purpose, or to communicate in

13   any way, any information so obtained,

14   *Or*

15   Aids, agrees with, employs, or conspires with any person or persons to unlawfully

16   do, or permit, or cause to be done any of the acts or things mentioned above in this

17   section.

18   76.    Section 631(a) is not limited to phone lines but also applies to newer technology

19   such as computers, the Internet, and email.

20   77.    Plaintiff asserts that Defendant Allstate violated clause 4 of Section 631(a) while

21   Defendant Heap violated clauses 2, 3 and 4 of Section 631(a).

22   78.    **Allstate's Violations:** At all relevant times, by using Heap's "Digital Insights

23   Platform", Allstate:

24        a.    aided, agreed with, employed, and conspired with Heap to implement

25              Heap's technology and to accomplish the wrongful conduct at issue here.

26   79.    **Heap's Violations:**  At all relevant times, by providing its "Digital Insights"

27   Platform" to Allstate, Heap:

28

a.   willfully and without the consent of all parties to the communication, read, or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and class members, while the electronic communications were in transit or passing over any wire, line, or cable or were being sent from or received at any place within California;

b.   used, or attempted to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, and

c.   aided, agreed with, employed, and conspired with Allstate to implement Heap's technology and to accomplish the wrongful conduct at issue here.

80.    Heap's "Digital Insights Platform" (including its autocapture and session replay technology) is a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue in this action.

81.    Heap's "Digital Insights Platform" (including its autocapture and session replay technology) intercepted, captured, or recorded Plaintiff's and Class members' communications in real time as the information was entered and simultaneously transmitted over the lines of internet communication between Plaintiff's devices and Allstate's servers. Plaintiff's and the putative class members' communications with Allstate were conducted using smart phones (cellular telephony with integrated operating systems to enable web browsing) and/or personal computers or Wi-Fi-enabled laptops or tablets and over the lines of internet communication.

82.    Heap read, or attempted to read, or to learn the contents or meaning of Plaintiff's communications with Allstate in real-time while the information was being transmitted from Plaintiff's devices to Allstate's servers. Pursuant to its Master Services Agreement with Allstate,[28] Heap read, or attempted to read, or to learn the contents or meaning of Plaintiffs' communications as part of its data processing service. Section 3.3. of Heap's Master Services Agreement provides that its customers "grant[] Heap the right to host and process Customer Data for providing and improving the Services and to support Customer under this Agreement."[29] Schedule 1 of Heap's

---

[28] Heap, *Master Services Agreement*, Heap, https://www.heap.io/legal/heap-master-services-agreement (last visited February 1, 2024).

[29] *Id.*

Data Processing Addendum to the Master Services Agreement provides how it will process "Customer User data." Heap recognizes that the "frequency of transfer" is "continuous"[30] and Heap admits that through its "Live data feed" service, its clients' customer data "flow[s] in real-time into Heap."[31]

83. After Heap "capture[s] and ingest[s]"[32] this customer data, Heap then provides the information back to its customers along with behavioral analytics tools and assessments. Heap further acknowledges that the "nature of the processing" includes "analysing data to identify behavioral patterns" and that the "purpose/s of the data transfer and further processing" includes producing "aggregate behavioral reporting" and "reporting on specific customer-defined behavioral patterns of interest over the aggregate of the captured end-user behavioral data."[33] Heap could not process, analyze, and/or report on Customer User data without reading or attempting to read or to learn the contents or meaning of the data that it is processing and analyzing. Similarly, it could not produce any behavioral reporting without reading or attempting to read or to learn the contents or meaning of the Customer User data that it is reporting on. Finally, it could not produce three Digital Experience Insight Reports without reading or attempting to read or to learn the contents or meaning of the data contained in those reports.[34]

---

[30] *Supra,* note 22.

[31] Heap, *How do I get real-time data in Heap*, Heap, https://help.heap.io/data-management/data-management-faqs/how-do-i-get-real-time-data-in-heap/ (last visited February 1, 2024).

[32] *Id.*

[33] Heap, *Data Processing Addendum*, Heap, https://assets.ctfassets.net/jicu8fwm4fvs/6AWQISW2unz8gv0mqnhGXj/354a04c377c0ca867276d415d31cb9e9/Heap_DPA_Dec_2022.pdf (last visited February 1, 2024).

[34] Heap, *Digital Experience Insights Report (v. 1)*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report ("we examined anonymized data from hundreds of customers")(last visited February 1, 2024).

Heap, *Digital Experience Insights Report (v. 2)*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report-installment-2 ("we dug through millions of user events to see just how often funnels mislead teams into thinking they understand user behavior") (last visited February 1, 2024).

Heap, *Digital Experience Insights Report (v. 3)*, Heap, https://www.heap.io/resources/ebooks-whitepapers/digital-experience-insights-report-installment-3 ("Three years. A thousand customers. Millions of queries, millions of events. Here's what we learned.") (last visited February 1, 2024).

84.     For many of the same reasons, and for others such as the fact that, on information and belief, Heap uses its customers' data to leverage business relationships with other service providers[35] and stores and shares data back to its customers to generate additional revenue, Heap used, or attempted to use, in any manner or for any purpose, information it obtained from Allstate about Plaintiff and members of the putative class.

85.     Plaintiff and class members did not consent to either Defendant's actions connected with Heap's wiretaps on Allstate's website.  Nor did Plaintiff or class members consent to Allstate providing Heap with intentional access, interception, reading, learning, recording, and collection of Plaintiff's and class members' electronic communications.

86.     Defendants' violation of section 631(a) constitutes an invasion of privacy. Information transmitted by Plaintiff and intercepted by Defendant Heap included, among other things, Plaintiff's name, zip code, gender, age, email address, height, weight, use of prescription medications and tobacco products, medical conditions, use of marijuana and THC, use of illegal drugs, and criminal record history.  This information is sensitive and confidential and Plaintiff had a reasonable expectation of privacy when he believed that he was only sharing this information with Allstate for the purpose of obtaining an insurance quote from Allstate.  Defendants' interception, capturing, recording, storing, sharing, reading, learning, and/or misuse of Plaintiff's sensitive and confidential information is highly offensive and egregious.  Plaintiff's personal and confidential information constitutes more than digital identification information such as an IP address.  Instead, Plaintiff's PII and PHI was illegally obtained by Heap and Allstate provided Heap with access to Plaintiff's PII and PHI.  Plaintiff's PII and PHI are sensitive and confidential information and the disclosure and interception of Plaintiff's PII and PHI by Defendants is highly offensive and constitutes egregious conduct.

---

[35] Diginomica, *How Heap's integration with HubSpot helps companies activate their customer journey data*, Diginomica, https://diginomica.com/how-heaps-integration-hubspot-helps-companies-activate-their-customer-journey-data (last visited February 1, 2024) (noting that Heap offers two-way integration with "HubSpot. . .Salesforce. . .Braze, AB Tasty, Intercom, Marketo, Iterable, Optimizely, and many others" and "sends Heap customer data to data warehouse platforms, such as Redshift, BigQuery, Snowflake, and S3").

87.     Plaintiff and class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

88.     Plaintiff further requests, as provided by CIPA, reasonable attorneys' fees and costs of suit, and punitive damages to be determined by a jury, sufficient to prevent or deter the same or similar conduct by Defendants.

<div align="center">

**COUNT II**
**Invasion of Privacy**
**California Constitution, Art. 1, § 1**

</div>

89.     Plaintiff repeats the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of the members of the class against Defendants.

91.     Plaintiff and class members have a strong interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and class members' knowledge or consent.

92.     Defendants wrongfully intruded upon Plaintiff's and class members' seclusion in violation of California law.  Plaintiff and class members reasonably expected that the private personal information and sensitive, confidential PII and PHI they entrusted to Allstate would be kept private and secure and would not be disclosed to any unauthorized third party or for any improper purpose.

93.     At all relevant times, by implementing Heap's wiretaps on Allstate's Website, each Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution and procured the other Defendant to do so.

94.     Defendants unlawfully invaded Plaintiff's and class members' privacy rights by:

      a.     harvesting their personal information, including sensitive, confidential PII and PHI, and transmitting it to unauthorized third parties or for improper purposes;

b.    harvesting their personal information, including sensitive, confidential PII and PHI for commercial purposes;

c.    enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

d.    enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

95.    A reasonable person would find it highly offensive that Defendant Allstate received, collected, and allowed Plaintiff's and class members' private personal information to be intercepted, captured, recorded, read, and/or learned by Defendant Heap without their consent and that Defendant Allstate allowed Defendant Heap to use and store their PII and PHI for commercial purposes without their consent.

96.    Plaintiff and class members did not consent to any of Defendants' actions in implementing Heap's wiretaps or "Digital Insights Platform" on Allstate's website.

97.    In failing to adequately protect Plaintiff's and class members' personal information, Defendants acted knowingly and in reckless disregard of their privacy rights. On information and belief, Defendant Allstate was aware that using Heap's "Digital Insights Platform" on Allstate.com would allow Heap to intercept, capture, record, read, and/or learn Plaintiff's PII and PHI and that Plaintiff's private information would be stored and used by Heap for its own commercial purposes. Nevertheless, Allstate chose to use, and Heap chose to offer its "Digital Insights Platform" without obtaining Plaintiff's or putative class members' consent. Defendants also knew or should have known that their conduct would be highly offensive to a reasonable person in Plaintiff's position.

98.    Defendants' use of the "Digital Insights Platform" allowed Allstate and Heap to use Plaintiff' PII and PHI for their own commercial and non-commercial purposes. Allstate used Plaintiff's private and sensitive information to improve its services, market additional products to Plaintiff and its website visitors, and by sharing the data with its marketing partners, insurance agents, brokers, and other third parties. While Heap used Plaintiff's private and sensitive information to "to identify behavioral patterns" and to produce "aggregate behavioral reporting" and "reporting on specific customer-defined behavioral patterns of interest over the aggregate of

the captured end-user behavioral data." Heap produced reports and whitepapers to support and increase sales of its "Digital Insights Platform." On information and belief, Heap also used Plaintiff's and its customers' data to leverage business relationships with other service providers and stored and shared this data to generate additional revenue. Defendants' unlawful invasions of privacy damaged Plaintiff and class members.

99. As a direct and proximate result of these invasions, Plaintiff and class members suffered mental distress, and their reasonable expectation of privacy were frustrated and defeated. This invasion of privacy is serious in nature, scope, and impact.

100. This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

101. Plaintiff and class members therefore seek all relief available for an invasion of privacy in violation of Article I, Section 1 of California's Constitution.

102. Plaintiff's counsel is entitled to attorney's fees and costs under Cal. Code of Civil Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests the Court enter judgment against Defendants through an order:

   a. Certifying the class under Fed. R. Civ. Pro. 23 and naming Plaintiff as the representative of the class and Plaintiff's attorneys as class counsel;

   b. Declaring that the Defendants' conduct violates the laws and standards referenced above;

   c. Finding in favor of Plaintiff and the class on all counts asserted herein;

   d. Granting Plaintiff and the class compensatory, statutory, and/or punitive damages or restitution;

   e. Awarding prejudgment interest on all amounts awarded;

   f. Awarding Plaintiff and the class their reasonable attorneys' fees and expenses and costs of suit; and

   g. Such other and further relief as the Court deems necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: February 5, 2024          Respectfully submitted,

**BERMAN TABACCO**

By:  */s/ Matthew D. Pearson*
          Matthew D. Pearson
          mpearson@bermantabacco.com

Joseph J. Tabacco, Jr.
jtabacco@bermantabacco.com
Alexander S. Vahdat
avahdat@bermantabacco.com
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

Christina D. Crow (admitted *pro hac vice*)
christy.crow@jinkscrow.com
**JINKS CROW, PC**
Union Springs Office
219 Prairie Street North
Union Springs, Alabama 36089
Telephone: (334) 738-4225
Facsimile: (334) 738-4229

Brent Irby (admitted *pro hac vice*)
brent@irbylaw.net
**IRBY LAW LLC**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 936-8281

James M. Terrell (admitted *pro hac vice*)
jterrell@mtattorneys.com
**METHVIN & TERRELL, YANCEY, STEPHENS &
MILLER, P.C.**
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 939-3006

*Attorneys for Plaintiff and the Proposed Class*